NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3497-15T2

MOHAMMED HOSSAIN,

 Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT OF
COMMUNITY AFFAIRS, SANDY
RECOVERY DIVISION,

 Respondent-Respondent.

_______________________________

NEW JERSEY DEPARTMENT OF
COMMUNITY AFFAIRS, SANDY
RECOVERY DIVISION,

 Petitioner-Respondent,

v.

MOHAMMED HOSSAIN,

 Respondent-Appellant.
_______________________________________

 Submitted August 8, 2017 – Decided August 15, 2017

 Before Judges Sabatino and O'Connor.

 On appeal from the New Jersey Department of
 Community Affairs, Sandy Recovery Division,
 Docket Nos. RRE0022673 and RSP0022615.
 Chad M. Sherwood, attorney for appellant.

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Melissa Dutton
 Schaffer, Assistant Attorney General, of
 counsel; Valentina M. DiPippo, Deputy Attorney
 general, on the brief).

PER CURIAM

 This appeal arises from a March 14, 2016 consolidated final

agency decision of the Department of Community Affairs ("DCA") to

recoup previously-allocated grant funds from a residential

property owner and deny him access to additional funds from the

Sandy Recovery Division. In particular, we mainly consider whether

DCA, which adopted an initial decision of an Administrative Law

Judge ("the ALJ"), had a sufficient basis in the record to deny

the owner access to Superstorm Sandy relief funds because he failed

to meet the $8,000 threshold in storm-related damages needed to

qualify for the grants.

 For the reasons that follow, we vacate DCA's decision and

remand for additional proceedings and factual findings. Among

other things, on remand DCA shall seek a FEMA inspection that was

not performed, and also shall calculate and take into account

permit fees and construction costs that, when added to appellant's

other expenses, potentially could lead to a repair estimate of

over $8,000.

 2 A-3497-15T2
 We derive the following background from the record.

Superstorm Sandy devastated large portions of coastal New Jersey

on October 29, 2012. Following the storm, the United States

Department of Housing and Urban Development allocated Community

Block Grant Disaster Recovery funds to aid in the relief effort

for property owners who sustained damage from the storm.

Allocations, Common Application, Waivers, and Alternative

Requirements for Grantees Receiving Community Development Block

Grant (CDBG) Disaster Recovery Funds in Response to Hurricane

Sandy, 78 Fed. Reg. 14329, 14335 (March 5, 2013). DCA administers

the program in New Jersey.

 In administering the federal funding, DCA created the

Superstorm Sandy Housing Intake Program, which is divided into

several types of grants. In this appeal, appellant Mohammed

Hossain challenges denials of his claims under two Sandy-related

programs: the Homeowner Resettlement Program ("HRP"), and the

Renovation, Reconstruction, Elevation and Mitigation Program

("RREMP").

 HRP offers grants for "any non-constructive purpose that

assists the homeowner to remain in the county in which they lived

at the time of the storm." Department of Community Affairs,

Disaster Recovery Division, Resettlement Program Policy: Version

 3 A-3497-15T2
3 4 (July 29, 2013). To receive an HRP grant of up to $10,000,

an applicant must demonstrate he:

 1. Resided in one of the nine distressed
 counties;

 2. Lived in the property as a primary
 residence at the time of the storm;

 3. Registered with FEMA by May 1, 2013; and

 4. Sustained Sandy-related damages with a
 fully verified loss ("FVL") of at least $8,000
 or experienced one foot of water on the first
 floor of the property.

 [Id. at 5.]

 Additionally, DCA administers aid through RREMP, which

assists impacted Sandy homeowners to "complete the necessary work

to make their homes livable and compliant with flood plain,

environmental, and other State and local requirements."

Department of Community Affairs, Sandy Recovery Division,

Reconstruction, Rehabilitation, Elevation and Mitigation (RREM)

Program: Policies and Procedures 16 (October 2014). The

qualifications for this program are nearly identical to HRP, with

the added requirement that a recipient have an adjusted household

gross annual income of less than $250,000. Id. at 18.

 Appellant owned, and continues to own, a building at 3001

Fairmount Avenue in Atlantic City. The property consists of three

units: a first-floor commercial space used as a convenience store,

 4 A-3497-15T2
a second-floor residence that appellant lives in with his wife and

children, and a third-floor apartment that he rents out.

 DCA does not contest that appellant lived in the second-floor

residence during Sandy. DCA stipulated that appellant would meet

nearly all other qualifications of both grant programs, but

disputes that he sustained a FVL on the second floor of at least

the minimum eligibility threshold of $8,000.

 Appellant applied to the DCA for both a HRP and RREM grant

through separate online applications in June 2013. He noted that

the property was damaged during Sandy, and he had registered with

FEMA.

 On July 28, 2013, DCA issued appellant a $10,000 grant

agreement and promissory note for the 3001 Fairmount property

under the HRP grant. Under the terms of the grant, appellant

attested that he met the HRP requirements, and agreed to continue

to reside in the property for three years in order to be forgiven

the $10,000. The funds were accordingly disbursed to appellant.

 After a delay of nearly two years not explained in the record,

DCA acted on appellant's RREM application. Laura Shea, an

assistant commissioner for DCA, issued appellant a denial letter

for this RREM application on April 27, 2015. Shea wrote that, in

reviewing his application, DCA determined he did not sustain the

$8,000 minimum amount of FVL.

 5 A-3497-15T2
 Additionally, Shea wrote appellant was not "legally

authorized to receive" the HRP grant money he had been given nearly

two years earlier, because he failed to meet the $8,000 threshold

for that grant, as well. Consequently, Shea demanded that

appellant reimburse DCA the $10,000 HRD grant if he had already

spent the disbursement.

 Appellant challenged both the RREM denial and the HRP

reimbursement demand. He submitted numerous invoices and

construction quotes to the agency to demonstrate his eligibility.

DCA transmitted the case to the Office of Administrative Law, and

an ALJ conducted a hearing on December 10, 2015. A representative

appeared for DCA, and appellant was self-represented. No witnesses

other than appellant testified.

 At the hearing, DCA argued that appellant had improperly

certified he had met the $8,000 threshold, and therefore the agency

could request a refund. In support of its position, DCA submitted

construction estimates that do reflect that more than $8,000 worth

of damages occurred at the property. However, the record is not

clear as to how much damage was associated with the residential

second floor – the only part of the property eligible for the

grants. Although appellant lives on the second floor, the

electrical panel for the entire property, for example, is on the

 6 A-3497-15T2
first floor. These and other facts about the premises made a

floor-by-floor analysis of the costs challenging.

 The property had two heating boilers that were replaced. The

costs of these boilers and what parts of each boiler serviced

which floor or floors were vital issues at the hearing.

 Customarily, DCA relies on FEMA inspectors to determine the

FVL. However, in the present case FEMA mistakenly inspected a

different building appellant owned as a landlord, 44 South Trenton

Avenue, instead of his subject residence at 3001 Fairmount Avenue.

Because appellant failed to correct FEMA's error, as DCA argued

he was obligated to do, DCA never received a valid FVL estimate

from FEMA for 3001 Fairmount Avenue.

 As the hearing transcript reflects, appellant testified that

a FEMA inspector mistakenly came to his Trenton Avenue property.

 ALJ: Did you have a meeting with an inspector
 and tell him you lived at Trenton Avenue?

 APPELLANT: No. The inspector came and – he
 came in Trenton Avenue. . . . He said ["]this
 is your house?["] I said yes. So he did the
 inspection and then . . . he left.

 . . . .

 ALJ: [W]hy did he come to Trenton Avenue and
 not Fairmount Avenue?

 APPELLANT: I don't – I don't know.

 7 A-3497-15T2
Given the evidence that appellant has lived at his Fairmount

residence since 2005 and voted in that precinct, the ALJ noted

that it made him "uncomfortable" that a FEMA inspector would show

up instead at appellant's Trenton Avenue rental property.

Appellant testified that his children attended a school near the

Fairmount property. The ALJ commented that "it makes it hard for

me to be a fact-finder without having both sides of the story" and

that a representative from FEMA should have been at the hearing.

 In explaining why DCA approved appellant's grant initially,

the agency's representative told the ALJ that the Trenton Avenue

property had sustained at least one foot of water, so the $8,000

threshold would not be applicable. Further, she remarked that

FEMA and applicants often made errors inspecting incorrect

properties if a property had a different mailing address from its

physical location. The ALJ also noted that the errors in this

matter may have been the result of a language barrier.

 Lacking the typical FEMA estimate in this case, DCA conducted

its own damage assessment. DCA summarized the documents it

considered: a November 2012 insurance adjuster's report, which

singled-out no damages for the second floor but reflected a total

furnace bill at $4,917; a report from Bangla Trade, Inc. and the

City of Atlantic City from April 2013 certifying $44,164 worth of

damage, without specifying what part of the property was damaged;

 8 A-3497-15T2
and a $3,050 chimney sweep and masonry invoice for the entire

Fairmount property. Additionally, appellant presented a quote for

$107,390.65 in repairs for the entire property by NK Construction,

which was conducted on October 5, 2015, several years after Sandy.

 With respect specifically to the replacement of boilers, DCA

reviewed an installation estimate from a contractor, Broadley's

of Marmora, of $6,889 for a 175,000 BTU boiler "for home" on

November 10, 2012. This estimate noted that a "permit is extra"

and that appellant also "must have [a] chimney inspection." This

quote also estimated a 100,000 BTU unit for what is delineated as

"home-apartment" at a cost of $6,071, excluding permitting and

chimney inspection expenses. Additionally, Broadley's provided a

$7,843 estimate on January 28, 2013 for a 100,000 BTU unit boiler

"for apartment." Again, this quote did not include a chimney

inspection or permit expenses.

 With respect to the residential boiler quote, the ALJ noted

at the hearing:

 If this is true and this was paid, [appellant]
 could probably get to the $8,000
 threshold . . . with incidentals that . . .
 are related to this, you know. . . . The permit
 fee, if there's an inspection fee . . . .
 Because it says [on the quote] "permit is
 extra. Build at cost. Must . . . have
 chimney inspected."

 9 A-3497-15T2
 Tellingly, the ALJ perceived a fundamental problem with DCA's

position:

 [Appellant] has extensive damages. I mean,
 he has at least $50,000 worth of damage [to
 the total property], close to it. And, you
 know, he's – he's a smidge below the $8,000,
 if you look at just based upon heating.

 . . . .

 I'm not a contractor, you're not a contractor,
 so . . . that's why we need that inspector to
 go out there, to say how much is this, was it
 attributable to -- or allocatable to
 commercial, residential. And if he went to
 the wrong address, maybe [appellant] is
 entitled to have an inspector go back out
 again.

 At the close of the hearing, the ALJ directed DCA to request

more information from FEMA and to ascertain whether appellant was

entitled to an additional FEMA inspection at the Fairmount

property. The record is unclear if DCA carried out this request.

 The ALJ also asked appellant to provide him with receipts of

what appellant paid for the repairs. Specifically, he asked

appellant to break out storm-related repairs isolated to the second

floor. The ALJ recognized that appellant was "very close on the

estimates, but [was] not close on the . . . bank or the adjuster's

calculations. Now, they may have lowballed it, they may have

depreciated it[.]"

 10 A-3497-15T2
 After the hearing, appellant presented to the ALJ an invoice

dated March 22, 2013 from Broadley's, which reflected that it

performed $13,285 worth of repairs to appellant's second-floor

heating and hot water units on March 18, 2013. The invoice listed

the installation of a 175,000 BTU boiler for the second floor. In

addition to the boiler installation, the invoice noted "additional

gas piping/water piping repairs." The invoice detailed $3,620 for

parts, and an installation price of $9,665.

 After the record closed, the ALJ issued a seven-page initial

decision on January 28, 2016. The ALJ framed the core issue as

whether the boiler used for the second floor sustained $8,000 in

damages.

 The ALJ first cited the adjuster's assessment for the entire

furnace repair of $4,917. He contrasted that estimate with the

$6,071 and $7,843 higher estimates appellant presented for the

second and third-floor boiler repairs total. Last, the ALJ

referenced the $13,285 invoice that appellant had submitted post-

hearing. The ALJ stated it was "unclear if this invoice is for

the second and third floor units or just petitioner's second floor

residential unit, because it is so much higher than all of the

previous estimates." He described the $4,917 and $7,843 quotes

as "making the $13,286 post-hearing paid invoice appear very high."

 11 A-3497-15T2
 Additionally, the ALJ again underscored that FEMA never

inspected the Fairmount property, remarking that the "tribunal

could have benefitted from the FEMA inspection." Even so, the ALJ

found it significant that an "independent adjuster" who is a "third

party outsider[] and [is] considered reliable" provided the $4,917

quote. Comparing that figure to the $6,071 to $7,843 estimates

presented by appellant pre-hearing, the ALJ concluded the

adjuster's figure was reasonable, and therefore appellant fell

below the $8,000 FVL threshold.

 The DCA Commissioner adopted the ALJ's decision as final on

March 14, 2016. Now represented by counsel, appellant seeks to

overturn that determination.

 Appellant contends that this court should rely on the proofs

to reach its own conclusions, which he argues demonstrate his

eligibility for either grant. Additionally, he argues that the

ALJ failed to consider chimney repair costs and the post-hearing

invoice, and instead relied on an estimate for a different boiler

unit to reach his conclusion. DCA counters that the ALJ relied

on credible proofs in the record, and did not reach his decision

arbitrarily or capriciously to deny appellant's grant eligibility.

 We are cognizant that appellate courts generally must afford

agency determinations' deference for orders based on the credible

 12 A-3497-15T2
evidence. Our role as an appellate court is restricted to four

inquiries:

 (1) whether the agency's decision offends the
 State or Federal Constitution; (2) whether the
 agency's action violates express or implied
 legislative policies; (3) whether the record
 contains substantial evidence to support the
 findings on which the agency based its action;
 and (4) whether in applying the legislative
 policies to the facts, the agency clearly
 erred in reaching a conclusion that could not
 reasonably have been made on a showing of the
 relevant factors.

 [George Harms Constr. Co. v. N.J. Tpk. Auth.,
 137 N.J. 8, 27 (1994) (citations omitted).]

 "An administrative agency's final quasi-judicial decision

will be sustained unless there is a clear showing that it is

arbitrary, capricious, or unreasonable, or that it lacks fair

support in the record." In re Herrmann, 192 N.J. 19, 27-28 (2007)

(citing Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963));

see also Aqua Beach Condo. Ass'n v. Dep't of Cmty. Affairs, 186

N.J. 5, 16 (2006). "The burden of demonstrating that the agency's

action was arbitrary, capricious or unreasonable rests upon the

[party] challenging the administrative action." In re Arenas, 385

N.J. Super. 440, 443-44 (App. Div.), certif. denied, 188 N.J. 219

(2006) (citing McGowan v. N.J. State Parole Bd., 347 N.J. Super.

544, 563 (App. Div. 2002); Barone v. Dep't of Human Servs., 210

N.J. Super. 276, 285 (App. Div. 1986), aff'd, 107 N.J. 355 (1987)).

 13 A-3497-15T2
 Despite that general policy of deference, we conclude that

the agency's decision in this particular case lacks adequate

support in the present record and, absent further development and

clarification of the record, is arbitrary and capricious.

 Throughout the hearing and his written decision, the ALJ

voiced concerns with DCA's proofs. He never found appellant lacked

credibility, and noted that any problem with his application may

be attributed to "a language barrier." Further, DCA does not

challenge appellant's residency, but instead blames appellant for

FEMA's mistake in inspecting the wrong property. Indeed, the ALJ

wrote his preference would be for FEMA to inspect the property

itself to give a truly unbiased opinion, and he mused that, in

fairness to appellant's application, FEMA should do so.

Unfortunately, that did not occur.

 The ALJ hypothesized during the hearing that the adjuster

might have "low-balled" appellant in its $4,917 estimate. However,

in his written decision, the ALJ placed substantial weight upon

the adjuster's figure in determining that the $13,000 estimate was

"very high." At the hearing's close, the ALJ orally noted that

permit costs and other fees could very well vault the $6,071 and

$7,843 estimates over the $8,000 threshold, but later declared in

his written decision that he could not accept the $13,285 actual

invoiced cost as valid.

 14 A-3497-15T2
 Having considered this rather convoluted record as a whole,

we are satisfied that the ALJ and the agency unreasonably concluded

that appellant's damages were definitely under $8,000. For

instance, taking the adjuster's furnace estimate of $4,917, and

adding the chimney estimate1 of $3,050, coupled with permitting

costs and the chimney inspection2, the $8,000 threshold is easily

cleared. The same can be said if the higher boiler estimates of

$6,071 or $7,843 were added to the chimney inspections and permit

costs.

 The ALJ did not explain sufficiently why the $13,285 invoice

for repairs performed, which was generated before litigation, was

unacceptable. Even if it is deemed unacceptable, the ALJ did not

explain why permitting and chimney fees were not included in his

final calculations. As the ALJ himself noted, certain documents

in the record indicated appellant was "a smidge below" the $8,000

threshold. Hence, the permitting and chimney costs manifestly

could have placed him over the required amount.

1
 Neither the ALJ opinion nor DCA's brief on appeal challenge the
chimney replacement estimate, nor do they factor that estimate
into their calculation. Ultimately, the chimney costs may not
factor into the second floor's FVL calculation in full or in part,
but they must be addressed on remand.
2
 Similarly, the ALJ opinion and DCA brief neglect to factor in
these added costs the contractor spotlighted as figures not
included in the initial estimates.

 15 A-3497-15T2
 DCA cites this court's opinion In re Adoption of Amendments

to Northeast, Upper Raritan, Sussex County Water Quality

Management Plans, 435 N.J. Super. 571, 582 (App. Div. 2014) to

advocate deference to the administrative determinations. However,

there the Appellate Division affirmed an agency decision that

differed from an ALJ decision because the agency placed greater

emphasis on an expert's report than the ALJ, but that decision was

still based in the record. Id. at 585. Here, the ALJ did give

greater weight to the $4,917 adjuster's estimate over the $13,286

invoice, but we note he also neglected to analyze the impact of

the $3,500 chimney quote or the permitting and chimney inspection

costs.

 Construction costs in actuality often exceed estimates, due

to a variety of reasons. Here, without making further inquiry

into the reasons behind the price disparity between the estimates

and the $13,280 invoiced sum, the ALJ improperly dismissed out of

hand the very evidence he requested appellant present him post-

hearing.

 These facts of the case, coupled with the nearly two years

that transpired between DCA issuing appellant a grant and demanding

a refund, leads us to conclude that the agency's decision should

be reconsidered on remand.

 16 A-3497-15T2
 On remand, DCA must seek a FEMA inspection of appellant's

property. Additionally, the remand proceeding should allow

appellant to present clearer evidence about the actual

construction work done, and the fact-finder should make associated

credibility determinations on the record.

 Vacated and remanded. We do not retain jurisdiction.

 17 A-3497-15T2